UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

ASHLEY MOREAUX                    CASE NO.  2:18-CV-01255

VERSUS                            JUDGE JAMES D. CAIN, JR.

CLEAR BLUE INSURANCE CO., ET AL.   MAGISTRATE JUDGE KAY

## MEMORANDUM ORDER

Before the court is an Appeal of Magistrate Judge Decision [doc. 77] filed by plaintiff Ashley Moreaux, in response to the Memorandum Order issued by Magistrate Judge Kathleen Kay [doc. 72] granting the Motion to Compel a Neuropsychological Examination [doc. 66] filed by defendant Hallmark Specialty Insurance Company ("Hallmark").

## I.
### BACKGROUND

This suit arose from a motor vehicle accident that occurred on March 1, 2018, and allegedly resulted in severe injuries to the plaintiff. Doc. 1. A jury trial is set before the undersigned on December 7, 2020. Doc. 54. On July 22, 2020, Hallmark filed the instant Motion to Compel, relating to a neuropsychological examination of plaintiff scheduled before defense expert Dr. Kevin Greve on August 3 and 4, 2020. Doc. 66. Namely, Hallmark disagrees with the following conditions plaintiff is attempting to impose on the examination:

(1) Testing will be limited to one day;

-1-

(2) Dr. Greve will identify the tests to be administered in advance of testing;

(3) Dr. Greve will identify, in advance, any malingering tests to be administered; and

(4) The examination will be videotaped.

Doc. 66.

Magistrate Judge Kay granted the motion over plaintiffs' opposition, determining that the examination should go forward without any of the above limitations. Doc. 72. Specifically, she found no basis for compressing the testing period in light of the plaintiff's own need for breaks and Dr. Greve's declaration in support of his need for two days to deliver all of his examinations. *Id.* at 2. She also found no benefit to pre-test disclosure of examination materials or identification of the tests to be performed. *Id.* at 2–4. Finally, she accepted Dr. Greve's reasons for opposing third-party observation (including electronic recording) of the examination and found that plaintiff had failed to show any benefit outweighing his concerns. *Id.* at 4–5. By electronic order, she also denied plaintiff's separate Motion for a Protective Order [doc. 71] for the same reasons the Motion to Compel was granted. Doc. 73.

Plaintiff now appeals these rulings, arguing that the Magistrate Judge failed to impose reasonable conditions on the examination. Hallmark has filed a response in opposition and maintains that Magistrate Judge Kay's ruling should be affirmed. Doc. 80.

## II.
## LAW & APPLICATION

### A.  Standard of Review

A magistrate judge may, with the consent of the presiding judge, adjudicate nondispositive pre-trial motions. 28 U.S.C. § 636(b)(1)(A). She is afforded broad discretion in this area. *A.M. Castle & Co. v. Byrne*, 123 F.Supp.3d 895, 898 (S.D. Tex. 2015). Any party may appeal the resulting order under Federal Rule of Civil Procedure 72, however, and the district judge may set aside any portion thereof upon a finding that it is "clearly erroneous or contrary to law." *Black v. Hornsby*, 2014 WL 2881153, at *1 (W.D. La. Jun. 24, 2014).

### B.  Application

#### 1.  Pre-Examination Disclosures

Plaintiff argues that Hallmark's objection to pre-examination disclosure of the tests to be performed amounts to a refusal to show good cause for the examination and renders the evaluation unfair. At the outset, the court notes that plaintiff has already been evaluated for traumatic brain injury by practitioners of her choosing. Accordingly, an examination on this subject by a defense expert, including any malingering evaluations for her symptoms, is within the scope of this litigation. Additionally, the concerns cited by plaintiff – namely, a belief that Dr. Greve is biased against plaintiffs generally and predisposed to find evidence of malingering,[1] along with concerns that he may administer tests that are

---

[1] To this end plaintiff cites a 2015 deposition, in which Dr. Greve admitted that he is retained by defense counsel in about 85 percent of his litigation work. Doc. 71, att. 2, p. 2. Plaintiff also attacks his methodology and asserts that he "uses specific tests for plaintiffs in litigation different from the general population and focuses on malingering and symptom exaggeration." Doc. 71, att. 1, p. 6. Dr. Greve's opinion on malingering recently survived a *Daubert*

irrelevant are unnecessary – provide grounds for a *Daubert* challenge or motion in limine. Hallmark has already made clear that it will provide these materials after Dr. Greve issues his report. Such disclosure will give the plaintiff adequate time to mount a challenge in the time prescribed under the court's scheduling order.

Hallmark has raised concerns that pre-examination disclosure and identification of the malingering tests would allow plaintiff to be coached in advance of the examination. Plaintiff's counsel maintains that the materials will not be disclosed to the examinee or counsel ahead of time, and that they only intend for their own experts to review them. Alternatively, they propose that the court conduct an *in camera* inspection of the list of tests in order to determine that they are appropriate in scope and diagnostic of traumatic brain injuries. Doc. 71, att. 1, p. 13.

Even without the coaching concerns, there is no basis for overturning Magistrate Judge Kay's decision on this matter. The fact that Dr. Greve generally testifies for defendants, focuses on malingering, and has faced challenges on his methodology, supra note 1, does not undermine his credibility to the extent that the court should hinder the defense medical examination before it even begins. Additionally, as Hallmark observes, plaintiff has already received evaluations for her traumatic brain injury by physicians of her choice and without any pre-examination controls by the court. For the court to intervene now and allow plaintiff to argue for limitations on the examination before it occurs would

---

challenge in another court, where plaintiff raised some of the same arguments. *See Howard v. Offshore Liftboats, LC*, 2016 WL 541470 (E.D. La. Feb. 11, 2016). The court will not prejudge any *Daubert* motion plaintiff may bring based on that decision, but uses it to note that plaintiff's assertions are a matter of dispute.

put the plaintiff at an undeserved advantage. Accordingly, the appeal is denied as to the pre-examination disclosures.

### 2. *Exam recording and third-party observation*

Plaintiff also objects to Magistrate Judge Kay's ruling that the examination may not be recorded or observed by a third party. Plaintiff admits that she is unaware of any Louisiana federal precedent for such a condition, but notes that it has been allowed in several Louisiana state court cases. *See* doc. 71, att. 7. Hallmark has argued that this request is unreasonable, citing Dr. Greve's own objections, and notes that plaintiff's examinations with her own practitioners were not recorded.[2] It has also agreed to provide plaintiffs with the raw data from each test Dr. Greve administers along with Dr. Greve's testing file. Doc. 66, att. 1, p. 14 n. 40. As Magistrate Judge Kay noted, in the absence of any evidence suggesting Dr. Greve will behave inappropriately, there is no basis for ordering observation/recording here when no such condition was placed on the exams conducted by plaintiffs' practitioners and when Dr. Greve has set forth an adequate basis for opposing it, infra note 2. Accordingly, the court finds no error and denies the appeal on this basis.

---

[2] Hallmark provides a declaration in which Dr. Greve shares his professional objections to third party observations, including the potential to compromise the validity of normative comparisons and change examinee behavior. Doc. 66, att. 8, pp. 6–9. To this end he cites a 2001 policy statement from the American Academy of Clinical Neuropsychology, opposing the presence of third party observers in neuropsychological assessments. *See id.* at 161–68. Plaintiff attempts to refute these concerns by arguing that advances in technology will minimize the intrusiveness of any recording devices. Doc. 77, p. 16. She also cites a study showing that "only" 20 percent of subjects showed disturbance after the first few moments of recording and another showing minimal disturbance in memory tasks under **audio** recording. *Id.* Finally, she cites an unpublished dissertation apparently showing minimal disturbance from observation behind a one-way mirror. *Id.* The court takes note of these reports but still finds Dr. Greve's concerns adequately supported.

### 3.  *Time limits on examination*

Finally, plaintiff objects to Magistrate Judge Kay's denial of any time limits beyond Dr. Greve's requested testing period of two eight-hour days. In support of his requested time Dr. Greve has set forth the general components of his exam. Doc. 66, att. 8, pp. 4–5. He also notes, in reliance on a 2015 professional practice survey, that "[n]ationally, among board-certified clinical neuropsychologists, the amount of time to complete a comprehensive forensic neuropsychological evaluation averages 13.5 hours and 75% take 10 hours or more." *Id.* Finally, he emphasizes the need for bathroom and lunch breaks and states that he has found "that scheduling two testing days accommodates these issues for most examinees." *Id.* Furthermore, Hallmark underscores that plaintiff has requested that she be allowed to take breaks at her discretion and notes that other federal courts have allowed two days for this kind of testing. *See Torrey v. Marion Cnty. Sch. Bd.*, 2014 WL 457766, at *2 (M.D. Fla. Feb. 4, 2014); *Boatner v. ABC Ins. Co.*, 2012 WL 3155529 (M.D. La. Aug. 2, 2012) (testing involving Dr. Greve).

In response plaintiff notes that a defendant and Dr. Greve, acting as defense expert, agreed to an eight-hour cap on his examination in another case recently before this court. *See Clark v. Wal-Mart Transp. LLC*, No. 2:13-cv-2417, 2014 WL 4700258, at *3 (W.D. La. Sep. 22, 2014). Plaintiff also notes that a magistrate judge recently capped Dr. Greve's examination at 4.5 hours after conducting an in camera review of the list of tests to be administered, despite his assertion that the exam would take at least six to eight hours. *Morris v. Barideaux*, 2009 WL 10679048, at *11 (E.D. La. Jan. 5, 2009). She cites two additional cases in which plaintiffs were ordered to submit to one-day neuropsychological

examinations. *See Sadler v. Acker*, 263 F.R.D. 333, 340 (M.D. La. 2009); *Merce v. Greenwood*, 2006 WL 1129398 (D. Utah Apr. 24, 2006). Finally, she notes that the neuropsychological testing conducted by her two practitioners took less than eight hours per exam. *See* doc. 77, p. 10. In response, Hallmark maintains that the other cases cited are distinguishable but does not show how. It insists, however, that the full two days should be afforded in light of plaintiff's need for breaks and the several hours of prior exams she has already gone with her own practitioners. Doc. 80, pp. 17–20.

The court is persuaded that Dr. Greve's examination might be accomplished in less than the two full days requested, and that the magistrate judge erred by declining to impose any limits. The plaintiff should not be subjected to an unduly protracted testing period, especially when she allegedly suffers from a traumatic brain injury and other severe injuries. Nevertheless, the plaintiff has placed these conditions at issue by filing suit. The court is also mindful that a strict time limitation might unfairly constrain the defense or that it might be even further eroded given the plaintiff's need for breaks. Accordingly, the court will reverse the magistrate judge's decision by allowing a maximum of six hours of testing per day, **excluding** plaintiff's breaks.

## III.
### CONCLUSION

For the reasons stated above, the Appeal of Magistrate Judge Decision is **GRANTED** in that the examination is limited to two six-hour days, excluding the time taken for plaintiff's breaks, and **DENIED** in all other respects. The examination should proceed as scheduled on August 3 and 4, 2020.

**THUS DONE AND SIGNED** in Chambers on this 31st day of July, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**