# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| ASHLEY MOREAUX AND CHRIS MOREAUX | NO. 2:18-CV-1255 |
| v. | JUDGE CAIN |
| CLEAR BLUE INSURANCE COMPANY, TIM ABLES TRUCKING COMPANY, LLC, SHANNON WATSON AND KEVIN POSEY | MAGISTRATE JUDGE KAY |

### MEMORANDUM IN SUPPORT OF *DAUBERT/FORET* MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DR. HUMA HAIDER, PLAINTIFF'S "TRAUMATIC BRAIN INJURY" EXPERT

*MAY IT PLEASE THE COURT*:

Plaintiff, Ashley Moreaux, intends to call Dr. Huma Haider, the principal and owner of National Brain Injury Institute, a Professional Limited Liability Company, in Houston, Texas, as a "traumatic brain injury" specialist. Defendants move this court to exclude Dr. Haider from testifying, due to her lack of expertise to opine on the subjects on which she purports to offer opinions, or alternatively to prevent Plaintiff or any witness from referring to or characterizing Dr. Haider as a "traumatic brain injury" specialist, for the reasons set forth more fully hereinbelow.

### RELEVANT FACTUAL BACKGROUND

In early April, 2020, more than two years after the accident at issue and within a few months of the original July, 2020 trial date, plaintiff Ashley Moreaux traveled to Houston, Texas, to visit the National Brain Injury Institute, a Professional Limited Liability Company, a business

1

entirely owned by Dr. Huma Haider.[1]  An office employee of NBII, Mr. Juan Hernandez,[2] administered certain psychometric tests to Ashley Moreaux and interviewed her during that visit, and Dr. Haider met and talked with Ashley for approximately five minutes in person and later that day by a "telemedicine" link.

Dr. Haider is an anesthesiologist and internal medicine physician. By her own admission, she is not a neurologist, neurosurgeon, neuroradiologist, psychologist, or psychiatrist.[3]  She does possess an online master's degree in psychology, but she has never taken steps to obtain licensure or certification as a psychologist.[4]  She took a weekend course in "interventional headache management" and was given certification in "headache management" from two organizations.  She also did a one year fellowship in "Neurocritical Care" at Baylor in 2011-2012 and is board certified in "Neurocritical Care" by the United Council of Neurologic Subspecialties.

As Dr. Haider's report and testimony make clear, she seeks to offer opinions to this court and jury at trial relating to the fields of neuroradiology, neurology, and psychology.  She is not certified or qualified to do so in any of those fields.  Her only area of relevant certification is in "neurocritical care," which, as the name itself suggests, is focused on the *critical* care of neurological injury (as in an ICU setting).[5]  Similarly, Dr. Haider's past experience as a "neurointensivist" relates to care of critically ill patients in neurointensive care units.[6]

---

[1] Plaintiff, in her supplemental deposition, was unsure of how she was referred to NBII, but one of her family members testified in deposition that she believed Ashley had been set there by her attorneys.  These depositions were taken last week, and no transcripts have been produced to date. As discussed with the Court and all parties in the status conference last week in Lafayette, Defendants will supplement this motion/memo with deposition transcripts, as needed, upon receipt. Dr. Haider testified that she did not know how Plaintiff was referred to her.
[2] Mr. Hernandez is currently the "Operations Manager" of NBII.
[3] *See* Exhibit C, 1/11/21 Depo of Dr. Haider, p. 17.  *See* 3/8/21 Depo of Dr. Haider, when transcript is received.
[4] *See* Exhibit C, 1/11/21 Depo of Dr. Haider, pp. 19-23.  *See* 3/8/21 Depo of Dr. Haider, when transcript is received.
[5] *See* publications of the Neurocritical Care Society, attached as Exhibits A and B hereto.  The United Council on Neurologic Subspecialties lists the "Neurocritical Care Society" and the American Academy of Neurology Critical Care and Emergency Neurology subsections as the "sponsoring organizations" for the "neurocritical care" subspecialty.
[6] *See* Exhibit C, 1/11/21 Deposition of Dr. Haider, pp. 48-55.  *See* March 8, 2021 deposition of Dr. Haider when transcript is received.

Here, Dr. Haider first saw Ashley Moreaux more than two years post-injury, when she was long past any "critical" phase of care or recovery. Dr. Haider is not certified or trained in post-critical neurological rehabilitation, and, again, she is not a neurologist. She is not qualified to opine on Ashley Moreaux's long term prognosis, on neuroradiology/DTI topics, or in the fields of psychology or psychiatry. Accordingly, this Court should limit Dr. Haider to her self-declared expertise in "neurocritical care," and therefore should not permit her to testify about Ashley Moreaux's current status or prognosis. Dr. Haider did not see Ashley during any "neurocritical" phase of her care or recovery and is not qualified to testify about a non-critical phase of recovery, rehabilitation, or long-term prognosis.

Alternatively, if this Court does not exclude Dr. Haider's testimony entirely, Defendants show that Dr. Haider should not be permitted to refer to herself, nor should Plaintiff or any other witness be permitted to refer to her as a "traumatic brain injury" specialist, as there is no such defined subspeciality or certification by any medical professional organization.

## **LAW AND ARGUMENT**

According to the Supreme Court in *Daubert*, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[7] The relevance requirement, which the Supreme Court described as "fit," means that "expert testimony proffered in the case [must be] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[8]

Determinations that an expert's testimony is reliable are the responsibility of the trial court.[9] The trial court must also determine whether or not the probative value of the expert's

---

[7] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).
[8] *Id. at 591 (quoting United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985).
[9] *State v. Catanese*, 368 So. 2d 975, 978-79 (La. 1979).

testimony outweighs any prejudice that could result if the testimony is admitted, by examining the risk that the trier of fact might assign too great a weight to the expert's opinion, the quality of the evidence to be proffered and the existence of procedural safeguards relating to the admissibility of evidence.[10]

This Court should be cautious about allowing testimony if the expert does not display "professional caution and devotion to accuracy."[11] Expert testimony should be excluded if it is not based on evidence that has been presented to the court, makes quantum leaps with respect to documentation, is outside of the witness' area of expertise, or is not supported by the testimony in the record.[12] Opinions developed for the purposes of litigation must be subjected to the greatest level of scrutiny because of their inherent unreliability, even when the expert is otherwise well-qualified, and Rule 702(b) requires that expert testimony be 'based upon sufficient facts or data.'

Here, for the reasons set forth above, Dr. Haider is not qualified to opine on the subjects on which she purports to offer expert opinion and should be excluded from doing so. Alternatively, this Court should in any event preclude Dr. Haider, any other witness, or Plaintiff from referring to Dr. Haider as a "traumatic brain injury" specialist at trial, as no such subspecialty or certification exists.

**WHEREFORE**, Defendants pray that this Honorable Court will enter an Order excluding Dr. Huma Haider from testifying at trial of this matter or alternatively limiting her and preventing her or Plaintiff from referring to Dr. Haider as a "traumatic brain injury" specialist.

---

[10] *Id.* at 982.
[11] *McKay v. Assured Inspection Mgmt., Inc.,* 91-259 (La. App. 5 Cir. 10/16/91), 588 So. 2d 729, 731.
[12] *Id.*

Respectfully submitted,

*s/Denia S. Aiyegbusi*
Robert E. Kerrigan, Jr. (#07350)
rek@deutschkerrigan.com
Denia S. Aiyegbusi (#31549)
denia@deutschkerrigan.com
**DEUTSCH KERRIGAN, LLP**
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Facsimile: (504) 566-1201
*Attorneys for Hallmark Specialty Insurance Company*

-AND-

*/s/ Paul Verlander*
Paula M. Wellons (#19028)
Paul Verlander (#19196)
**Taylor, Wellons, Politz & Duhe, APLC**
1515 Poydras Street, Suite 1900
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 535-9899

*Attorneys for James River Insurance Company*

**Certificate of Service**

I HEREBY CERTIFY that on the **8th day of March, 2021**, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ Paul J. Verlander*
───────────────────────────
　　　　Paul J. Verlander